## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN BERREY,<br><br>                   Plaintiff,<br><br>v.<br><br>EVOLVE CELLULAR, INC., and<br>LOWELL FELDMAN,<br><br>                   Defendants. | Civil Action No. 1:23-cv-11433-LTS |

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR TRANSFER

### I.      INTRODUCTION

This case centers on the Defendants' flagrant and repeated violations of the Massachusetts Wage Act, M.G.L. c. 149, § 148 *et seq.* (the "Wage Act")*.* For years, Evolve Cellular, Inc. (the "Company") by and through President and CEO Lowell Feldman ("Feldman") (collectively the "Defendants") unlawfully deferred fifty percent (50%) of the wages earned by its Massachusetts employee, Plaintiff Alan Berrey ("Berrey"). When Berrey asserted his legal right to such earned wages, the Defendants unlawfully retaliated against him by cutting his salary in half. Now, in a brazen effort to evade the reach of Massachusetts law and the strict requirements of the Wage Act, the Defendants advance a series of specious legal assertions to dismiss and/or transfer this matter.

This Court should not countenance Defendants' efforts, and should deny Defendants' Motion because, *inter alia*, this Court has personal jurisdiction over Feldman, the Complaint states a claim upon which relief can be granted, there is no enforceable agreement to arbitrate or applicable forum selection clause, and venue in Massachusetts is proper.

## II.   FACTS AND PROCEDURAL HISTORY

The following facts are taken from the Complaint ("Compl.") and must be accepted as true for the purposes of Defendants' Motion. *See Baskin–Robbins Franchising LLC v. Alpenrose Dairy, Inc.,* 825 F.3d 28, 34 (1st Cir. 2016) (in deciding motion to dismiss for lack of personal jurisdiction, court must give credence to plaintiff's version of genuinely contested facts).

Berrey is a Massachusetts resident who lived and worked in Massachusetts throughout his employment with the Company. Compl. ¶¶ 1,13. During his employment, Massachusetts income taxes were withheld from Berrey's wages. *Id.* ¶ 17.

Feldman is the majority owner, President and Chief Executive Officer of the Company. *Id.* ¶ 3. Feldman is, and was at all times relevant hereto, the principal actor on behalf of the Company, directing the Company's initiatives and making the Company's major business decisions, including decisions to conduct business in Massachusetts, as well as Berrey's employment and the non-payment of wages at the heart of this case. *Id.* ¶¶ 3, 20, 25, 28.

By way of example, in or about early 2014, Feldman reached out to Berrey in Massachusetts to negotiate the purchase of a Massachusetts-based corporation that Berrey founded and co-owned. *Id.* ¶¶ 7-8. During this time, Feldman also reached out to Massachusetts to offer Berrey employment with the Company, and to negotiate the terms and conditions thereof. *Id.* ¶¶ 9-10. Feldman traveled to Massachusetts several times to discuss both the purchase of Berrey's company and Berrey's potential employment with the Company. *Id.* ¶ 10.

During Berrey's employment, Feldman served as Berrey's direct supervisor, regularly reached out to Berrey in Massachusetts to direct his work, and also reached out to Berrey in Massachusetts regarding the deferral of Berrey's earned wages. Compl. ¶¶ 3, 13, 20.

Feldman, on behalf of the Company, presented Berrey with an Employment Agreement

which Berrey signed in Massachusetts on March 1, 2016. *Id.* ¶ 11. After the Company terminated the Employment Agreement (by sending notice of such termination to Berrey in Massachusetts on or about June 30, 2017, Berrey's employment continued at the same rate of pay, *i.e.*, $15,000 per month. *Id.* ¶¶ 18-19. On March 23, 2020, Feldman called Berrey in Massachusetts and told him that the Company would begin deferring 50% of Berrey's earned wages. *Id.* ¶ 20. This deferral continued from April 1, 2020, through February 28, 2023, during which time Berrey was paid $7,500 per month. *Id.* ¶¶ 21-24. When Berrey began seeking his earned wages in January 2023, Feldman made excuses, backpedaled on his prior promises to pay Berrey the outstanding earned wages, and finally, at the end of February 2023, sent Berrey an email in Massachusetts in which he prospectively "lower[ed]" Berrey's salary to $7,500 per month, "effective immediately." *Id.* ¶¶ 25, 26, 28.

Berrey filed his Complaint with the Middlesex County Superior Court on May 23, 2023. Eight days later, on May 31, 2023, in the first of what became multiple efforts to evade application of the Wage Act, Defendants filed a complaint against Berrey in Texas state court (the "Texas Complaint")[1] seeking, in part, declaratory relief under Texas law stating that Berrey is not entitled to any outstanding wage payments. Texas Compl. pg. 10. Defendants removed the instant action to this Court on June 30, 2023, and Berrey removed the Texas suit to a federal district court in Texas on July 7, 2023. On July 14, 2023, Berrey moved to dismiss and/or transfer the Texas Complaint citing *inter alia* the first-to-file rule and the instant litigation.[2]

### III.    DEFENDANTS' RULE 12(B)(2) MOTION—PERSONAL JURISDICTION OVER FELDMAN

---

[1] Defendants have moved this Court to take judicial notice of the Texas Complaint, entitled *Evolve Cellular, Inc. v. Berrey*, C.A. No. 1:2023-cv-11433.

[2] It is proper for this Court to take judicial notice of Berrey's motion to dismiss and transfer in Texas, as pleadings in other states are subject to judicial notice. *See Airframe Sys., Inc. v. Raytheon Co.*, 520 F. Supp. 2d 258, 262 (D. Mass. 2007).

01. Sherin and Lodgen\4861-9658-8147.v1-7/27/23

1. *__Standard of Review__*

In responding to a Rule 12(b)(2) motion, a plaintiff need only make a *prima facie* showing by "proffer[ing] evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robbins Franchising LLC*, 825 F.3d at 34. This Court may consider "the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record," and must accept the plaintiff's "properly documented evidentiary proffers as true and construe them in the light most favorable to [the plaintiff's] jurisdictional claim." *Id.*

2. *__This Court has Personal Jurisdiction over Defendant Lowell Feldman__*

Berrey has provided sufficient specific allegations to establish this Court's personal jurisdiction over Feldman, satisfying the requirements of both the Massachusetts long-arm statute, M.G.L. 223A, § 3, and the Due Process Clause of the U.S. Constitution.

### A.  The Massachusetts Long-Arm Statute Extends Jurisdiction over Feldman

Berrey's Complaint adequately alleges personal jurisdiction over Feldman because he was "transacting any business in this Commonwealth." *See* M.G.L. 223A, § 3(a); *see also Cannonball Fund, Ltd. v. Dutchess Cap. Mgmt., LLC*, 84 Mass. App. Ct. 75, 98 (2013) ("anything but the most incidental commercial contact is sufficient."). Feldman's extensive involvement and participation in an eight-plus-year business / employment relationship with Berrey centered in Massachusetts is more than enough to establish jurisdiction. *See Crowe v. Harvey Klinger, Inc.*, 277 F. Supp. 3d 182, 191 (D. Mass. 2017) (holding that company president's contacts with Massachusetts employee throughout employment established personal jurisdiction). Indeed, it was Feldman, the majority owner, President, and CEO of the Company, who **personally** took actions to expand his Company into Massachusetts, **personally** offered Berrey a job in Massachusetts, **personally** negotiated the terms of his employment, and **personally** actively managed and directly supervised

Berrey while the latter worked in Massachusetts. *See Gleason v. Jansen*, No. 09-P-1210, 2010 WL 1708746, at *3 (Mass. App. Ct. Apr. 29, 2010) (holding Massachusetts long-arm extends jurisdiction to corporate officer who is principal actor of corporation and from whom major directives flow).

Perhaps most significantly, Feldman's business activities in Massachusetts are the direct cause of Berrey's claims. *Doucet v. FCA US LLC*, 492 Mass. 204, 208-09 (2023) (noting the defendant transacting business need only be a "but for" cause, *i.e.* "the first step in a train of events that results in [plaintiff's claims]"). Feldman's personal contacts with Massachusetts were the first step—hiring Berrey in Massachusetts—and the last step—implementing the unlawful wage deferral, and retaliatory salary reduction—in the claims that Berrey now brings. *See Tatro v. Manor Care, Inc.*, 416 Mass. 763, 770 (1994) ("but for" causation established where defendants' Massachusetts business transactions "brought the parties within tortious 'striking distance' of each other").[3]

### B. Personal Jurisdiction Over Feldman Comports With the Requirements of the Due Process Clause of the U.S. Constitution

Berrey has proffered ample evidence to establish that personal jurisdiction over Feldman is reasonable in light of his purposeful contacts with Massachusetts and the close relationship between those contacts and Berrey's claims. Put simply, this Court's jurisdiction over Feldman is clearly constitutional.[4]

---

[3] Defendants' reliance on *Perras v. Trane U.S., Inc.*, 463 F. Supp. 3d 38 (D. Mass. 2020) is misplaced. In *Perras*, jurisdiction over a pair of corporate executives was inappropriate where their combined Massachusetts contacts amounted to two visits in ten years, and quarterly conference calls with one Massachusetts participant—neither of the executives had any personal interactions with the plaintiff. The contrast here could not be more stark—Feldman's personal and plentiful transactions in Massachusetts are more than enough to establish personal jurisdiction.

[4] The relevant inquiry as to the comportment of personal jurisdiction with the Due Process Clause is whether: (1) the claim underlying the litigation arises out of, or relates to, Feldman's Massachusetts activities (*i.e.*, the "relatedness inquiry"); (2) Feldman's in-state contacts represent a purposeful availment of the privilege of conducting activities in Massachusetts, rendering presence before this Court foreseeable; and (3) the exercise of jurisdiction is reasonable. *See*

### i.    Berrey's Claims are Related to Feldman's Massachusetts Activities

The Complaint adequately alleges that Feldman's personal activities in Massachusetts caused the claims in this litigation. Feldman called Berrey in Massachusetts to implement the unlawful deferral of Berrey's earned wages and subsequent, retaliatory cut to his salary. *See Cossart v. United Excel Corp.*, 804 F.3d 13, 21 (1st Cir. 2015) (corporate officer's involvement in the conduct giving rise to suit is sufficient to establish jurisdiction); *Galletly v. Coventry Healthcare, Inc.*, 956 F. Supp. 2d 310, 313 (2013) (employees are subject to jurisdiction when they are primary participants of alleged wrongdoing); *cf. Perras*, 463 F. Supp. 3d at 43 (finding no personal jurisdiction over corporate officers who had no role in plaintiff's injury). This Court needs no more[5] to find relatedness. [6]

### ii.    Feldman's In-State Activities Were Purposeful

Feldman personally, intentionally, and repeatedly reached out to Massachusetts. He cannot now cry foul when his unlawful conduct in Massachusetts results in a lawsuit in Massachusetts. Purposeful availment of a forum occurs when "a defendant deliberately targets its behavior toward

---

*Copia Communications, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016).

[5] Of course, this Court has much more. Feldman personally transacted business in Massachusetts and Berrey's claims arise directly from those transactions. *See Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995) (relatedness requirement met where "the action... directly arise[s] out of the specific contacts between the defendant and the forum state"). Feldman frequently emailed and called Berrey in Massachusetts. *See LaVallee v. Parrot-Ice Drink Products of America, Inc.*, 193 F.Supp.2d 296, 303 (D. Mass. 2002) ("The transmission of information into Massachusetts by way of the mails, the internet or the telephone is decidedly a contact for purposes of the relatedness analysis.") (citing *Sawtelle*, 70 F.3d at 1389). Feldman also actively directed and supervised Berrey's work in Massachusetts. *See Kleinerman v. Morse*, 26 Mass. App. Ct. 819, 824 (1989) ("active managerial conduct in the State where jurisdiction is asserted will cause jurisdiction to attach") (internal citations omitted).

[6] Defendants' argument that Berrey is required to establish that Feldman "derived personal benefit" in order to establish personal jurisdiction is without merit. *See LaVallee*, 193 F. Supp. 2d at 301 (noting that Courts will disregard the need to establish "personal benefit" in cases, such as here with Feldman, where the defendant was the "alter-ego of the corporation or … had an identity of interest with the corporation itself (i.e., the corporation and the corporation's president)"). Regardless, Berrey has adequately alleged that Feldman derived benefit from his activities in Massachusetts — Feldman is the majority owner of the Company and money saved through the unlawful wage deferrals and retaliatory salary cuts flows directly into his pockets.

the society or economy of a particular forum [such that] the forum should have the power to subject the defendant to a judgment regarding that behavior." *Carreas v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011). "The enforcement of personal jurisdiction over a non-resident defendant is foreseeable when the defendant has established a continuing obligation between itself and the forum state." *Sawtelle*, 70 F.3d at 1393.

Feldman deliberately took actions to expand his business into Massachusetts by purchasing the Massachusetts-based assets of a Massachusetts-based company and hiring several Massachusetts employees, including Berrey. Compl. ¶¶ 8-10. Feldman negotiated Berrey's contract with the understanding that Berrey would perform his work in Massachusetts. *See Cossart*, 804 F.3d at 18 (finding personal availment on part of company president who "personally negotiated the employment. . . that contemplated [plaintiff] would work out of Massachusetts"). Further, in connection with Berrey's employment in Massachusetts, Feldman called Berrey in Massachusetts and implemented the unlawful wage deferral and retaliatory salary reduction in Massachusetts. *See Ferrara v. Voyport II, LLC*, No. 16-cv-12024, 2017 WL 1347672, at *4 (D. Mass. Apr. 7, 2017) (finding personal availment by company executive that sent communications to forum that addressed plaintiff's unpaid wages). Feldman then continued his wrongful act by directing the Company to pay Berrey only half of Berrey's earned wages for the next three years. Feldman's purposeful conduct renders litigation in a Massachusetts court entirely foreseeable.

iii.   Exercising Jurisdiction Over Feldman is Reasonable

Reasonableness, for the purposes of this constitutional analysis, is determined in light of the "gestalt factors." *Sawtelle*, 70 F.3d at 1394. The court must consider: (i) Feldman's burden of appearing; (ii) Massachusetts' interest in adjudicating the dispute; (iii) Berrey's interest in obtaining convenient and effective relief; (iv) the judicial system's interest in obtaining the most

7

effective resolution of the controversy; and (v) the common interests of all sovereigns in promoting substantive social policies. *See C.W. Downer & Co. v. Bioriginal Food & Science Corp.*, 771 F.3d 59, 69 (1st Cir. 2014). Here, in the aggregate, the gestalt factors clearly favor this Court's exercise of jurisdiction over Feldman.

First, Feldman has not shown "some kind of special or unusual burden" arising out of litigating in Massachusetts. *Bluetarp Financial, Inc. v. Matrix Cost. Co., Inc.*, 709 F.3d 72, 83 (1st Cir. 2013) (noting that "mounting an out-of-state defense most always means added trouble and cost, and therefore" more is required under the first gestalt factor). Second, by contrast, "Massachusetts clearly has an interest in being the forum that determines whether [Berrey], who performed his work for the company in the Commonwealth, has a meritorious claim under the Massachusetts Wage Act." *Cossart*, 804 F.3d at 22.

The third factor also tilts "heavily" in favor of asserting jurisdiction over Feldman; "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." *See Crowe*, 277 F. Supp. 3d at 193 (quoting *Sawtelle*, 70 F.3d at 1395). The fourth gestalt factor also favors asserting jurisdiction. Judicial efficiency supports allowing this first-filed matter to proceed in Berrey's chosen forum, as Feldman's dismissal would result in parallel actions here and in Texas. *See Adelson v. Hananel*, 641 F. Supp. 2d 65, 79 (D. Mass. 2009) (instituting second suit where one already exists is "an inefficient burden on the judicial system"); *Gather, Inc. v. Gatheroo, LLC*, 443 F. Supp. 2d 108, 119 (D. Mass. 2006) (quoting *Hasbro, Inc. v. Clue Computing Inc.*, 994 F. Supp 34, 46 (D. Mass. 1997) (as general rule, "[t]he most efficient path for the judicial system. . . is to move forward with the lawsuit in the present forum")).

Regarding the final factor, Massachusetts has a clear and compelling interest in "affording its citizens a convenient forum in which to bring their employment claims." *Crowe*, 277 F. Supp.

3d at 194; *see also C.W. Downer & Co.*, 771 F.3d at 70 ("Massachusetts 'has a manifest interest in providing a convenient forum to residents asserting good faith and objectively reasonable claims for relief.'"). The Defendants may contend that Texas has an interest in adjudicating claims related to its corporate employers within its borders. At best, for the Defendants, the fifth factor is a wash. *See Crowe*, 277 F. Supp. 3d at 194.

In sum, the gestalt factors point clearly and convincingly towards this Court's exercise of jurisdiction over Feldman. Indeed, doing so aligns with a consistent trend in the First Circuit of exercising jurisdiction over out-of-state corporate officers actively involved in employing Massachusetts citizens who bring employment claims. *See Post v. Mark Edward Partners LLC,* No. 1:22-CV-10148-RWZ, 2022 WL 5118214, at *2 (D. Mass. Oct. 3, 2022); *see also Crowe,* 277 F. Supp. 3d at 194; *Cossart*, 804 F.3d at 19 (and cases cited); *Ferrara*, 2017 WL 1347672, *4. Accordingly, Defendants' motion to dismiss Feldman for lack of personal jurisdiction must be denied.

## IV.    DEFENDANTS' RULE 12(B)(6) MOTION

### 1.    *Standard of Review*

On a Rule 12(b)(6) motion, this Court must "assume the truth of all well-pleaded facts in the complaint and indulge all reasonable inferences that fit the plaintiff's stated theory of liability." *Carter's of New Bedford v. Nike*, 790 F.3d 289, 291 (1st Cir. 2015). "If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied." *Stichting Pensioenfonds OPG v. State Street Bank and Trust Co.*, 671 F. Supp. 2d 213, 214 (D. Mass. 2009).

### 2.    *There is No Enforceable Forum Selection Clause or Arbitration Agreement Governing Berrey's Claims*

#### A.  The Employment Agreement is Void and Unenforceable as a Matter of Law

Defendants go to great lengths to obfuscate what they cannot dispute—the written employment agreement between the parties, entered into on March 1, 2016 (the "Employment Agreement"), was terminated by the Defendants on June 30, 2017. Compl. ¶ 18. This is not merely an allegation to be taken as true in Berrey's Complaint—Defendants aver the very same thing in the Texas Complaint, noting "Berrey's Employment Agreement expired, [and] in July of 2017, Berrey became an at-will employee…." Texas Complaint ¶ 8.[7] There is no provision anywhere in the Employment Agreement suggesting any of its terms survive the termination of the agreement.

Further, even if the Employment Agreement did somehow survive and was operative here, it does not include a forum selection clause. *See* Employment Agreement ¶ 9 (providing for choice of law in disputes arising under or related to the Employment Agreement but **not** providing for forum selection).

### B.  No Arbitration Agreement Exists

Defendants' assertion that this dispute must be submitted to arbitration is similarly smoke and mirrors. In short, there simply is no arbitration agreement, which is why the Defendants have not produced any evidence of one. Rather, the most Defendants can muster is a provision in the now defunct Employment Agreement that references a separate, unspecified arbitration agreement, which does not exist and was never provided to Berrey.[8]

---

[7] Defendants cannot now be allowed to reverse course and take an inconsistent position—they "should not be permitted 'to blow hot and cold' in this way." *Ohler v. U.S.*, 529 U.S. 753, 762 (2000) (Souter, J. dissenting) *citing* 1 J. Strong, McCormick on Evidence, § 55, p. 246, n 14 (5th ed. 1999).

[8] Defendants make much of the Federal Arbitration Act and the liberal federal policy favoring arbitration. *See* Defs.' Memo pg 9. The United States Supreme Court recently clarified such policy is "about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.* 142 S.Ct. 1708, 1713 (2022). "If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it." *Id.* Ordinary contract formation requires that "there is reasonable notice of the terms and a reasonable manifestation of assent to those terms." *Kauders v. Uber Technologies, Inc.*, 486 Mass. 557, 572 (2022). Here, the language in Berrey's extinguished Employment Agreement could not have provided reasonable notice of the terms of any agreement to arbitrate, and absent such notice, he could not reasonably assent.

A party seeking to enforce such an agreement bears the initial burden of production. *See Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 168 (1st Cir. 2022) ("[Movant] bears the burden of demonstrating that a valid agreement to arbitrate exists."); *see Cream v. Morgan Stanley Smith Barney, LLC*, C.A. No. 21-cv-11021-PBS, 2023 WL 363589, at *5 (D. Mass. Jan. 23, 2023) (denying motion to compel arbitration upon defendant's failure to "satisfy its initial burden of production as to a valid written agreement to arbitrate"). Defendants have failed to satisfy their burden of production, and thus there is no enforceable arbitration agreement here.[9]

### C. The Forum Selection Clauses Contained In the Non-Compete and Option Agreements Do Not Apply

Finally, grasping at factual and contractual straws, Defendants seek to impose the forum selection clauses contained in other, unrelated agreements which have no bearing on Berrey's statutory and common law claims regarding the non-payment of wages. These efforts should fail.

The Confidentiality and Non-Competition Agreement (the "Non-Compete") provides for the application of Texas law in a Texas forum in "any Proceeding directly or indirectly relating to or arising out of this Agreement." Non-Compete, ¶ 9. Substantively, the Non-Compete includes four topics: Confidentiality and Intellectual Property (Sec. 1); Noncompetition (Sec. 2); Nonsolicitation (Sec. 3); and Nondisparagement (Sec. 4). *See generally* Non-Compete. The Non-Compete explicitly provides that its purpose is restricted "to protect[ing] the goodwill, customer relationships, legitimate business interests, trade secrets and confidential and proprietary information of the Company Parties." *Id.* ¶ 6. However, every single claim Berrey states relates to the non-payment of wages, meaning such claims exist independently of and in no way relate

---

[9] Texas law agrees. *See SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 714 (Tex. App. 2020) (party seeking to compel arbitration must establish both that there is a valid arbitration agreement and that the dispute falls within its scope); *Alorica v. Tovar*, 569 S.W.3d 736, 740 (Tex. App. 2018) (explaining a valid arbitration agreement is threshold requirement for compelling arbitration, and burden of showing existence of such agreement lies on party seeking to compel arbitration).

(directly or indirectly) to or arise out of the Non-Compete. *See Lampkin v. Emp't Servs., Inc.*, No. CV 2:15-1462-RMG-BM, 2015 WL 8900970, at *2 (D.S.C. Dec. 11, 2015), report and recommendation adopted, 2016 WL 111429 (D.S.C. Jan. 11, 2016) ("Plaintiff's causes of action must still be within the scope of the mandatory forum-selection provision for these clauses to be applicable to this case.").

In *Lampkin*, the court held that forum selection clauses in the plaintiff's non-compete and confidentiality agreements which stipulate they apply to "any action or proceeding *arising out of, or relating to*, this Agreement" could not apply to *any* action related to the plaintiff's employment because "the Agreements [in question] are by their very terms restricted to the specific areas of employment (noncompete and nondisclosure requirements) discussed herein." *Id.*, at *2 (emphasis added). Consequently, that court denied a motion to dismiss because the plaintiff's statutory discrimination and retaliation claims were unrelated to confidentiality and competition. Here, the same is true—none of Berrey's claims relate to or arise out of the parties' respective rights and obligations regarding confidentiality, noncompetititon, nonsolicitation, or nondisparagement. Thus, the Non-Compete's forum selection clause does not apply to the instant dispute.

Other federal courts have reached the same conclusion. *See, e.g., Yevak v. Nilfisk-Advance, Inc.*, No. 5:15–cv–05709, 2016 WL 538333, at *3 (E.D. Pa. Feb. 11, 2016) ("the phrase 'relates to' should not be stretched so broadly that it becomes meaningless").[10] In *Yevak*, the plaintiff's statutory retaliation and discrimination claims were not encompassed by a forum selection clause covering "any litigation in any way relating to this Agreement," *id.* at *2, where that "agreement

---

[10] *See also Bailey v. ERG Enterprises, LP*, 705 F.3d 1311, 1317-18 (11th Cir. 2013) (holding fraud claims not covered by forum selection clause which covered claims "related in any way" to a contract because "if 'relate to' were taken to extend to the furthest stretch of its indeterminacy, it would have no limiting purpose because really, universally, relations stop nowhere.") (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995).

was 'designed to protect the Company's Confidential Information, business relationships, and competitive advantage.'" *Id.*, at *3. The *Yevak* court held: "The present lawsuit has nothing to do with any of these matters." *Id.* Again, the same is true here—Berrey's claims have nothing to do with any of the matters covered by the Non-Compete, and the forum selection clause contained therein cannot be applicable here.

Defendants note that Feldman and Berrey are "sophisticated businesspeople." Defs.' Memo pg. 13. Defendants could have drafted the type of all-encompassing forum selection they now suggest exists. *See Baby Furniture Warehouse Store, Inc. v. Meubles D & F Ltee*, 75 Mass. App. Ct. 27, 30 (2009) (interpreting contract clause selecting forum for "any disputes arising out of or related to" the contract "*or the relationship between the [parties]*" as extending beyond contract claims and to tort claims as well) (emphasis added); *Melia v. Zenhire*, 462 Mass. 164, 166 (2012) (holding "any and all disputes arising out of this Agreement *or the employment relationship created thereby*" covered contract, tort, and statutory claims regarding nonpayment of wages) (emphasis added). However, the Defendants chose not to use such broad language, and instead to cover only those claims that relate to the Non-Compete.[11] Consequently, the forum selection clause in the Non-Compete cannot bear upon Berrey's claims.

Defendants also cite to similarly inapposite provisions in a Non-Qualified Stock Option Agreement (the "Option Agreement") providing for Texas law and forum in any dispute "arising under or relating to this [Option Agreement]." Option Agreement ¶ 14(f). Again, this is not a dispute about non-qualified stock options, and none of the provisions in the Option Agreement relate to payment of Berrey's earned wages. Just as with the Non-Compete, Berrey's claims exist

---

[11] Further, the Non-Compete explicitly carves out claims made by Berrey against the Company, stating that the "existence of any claim or cause of action by [Berrey] against any Company Party, whether predicated upon this Agreement or otherwise. . . shall be claimed and litigated separately." Non-Compete ¶ 10.

entirely independently of the Option Agreement. *See Doe v. Seacamp Ass'n, Inc.*, 276 F. Supp. 2d 222, 228 (D. Mass. 2003) (quoting *McAdams v. Mass. Mut. Life Ins. Co.*, 2002 WL 1067449, at *12 (D. Mass. May 15, 2002) (forum selection clause only applicable "where 'the source of the duty which the defendants allegedly owed to the plaintiffs is derived from the contractual relationship'")). Here, Defendants' duty to pay Berrey his earned wages is not derived from the Option Agreement (nor, for that matter, from the Non-Compete). As such, the instant litigation is not "arising under or relating to" the Option Agreement and that document's forum selection clause cannot apply.

### D.  None of the Varied Forum Selection Clauses are Enforceable as to the Wage Act Claims

Even assuming, *arguendo*, that an otherwise valid and applicable forum selection clause existed, it must be set aside because it will deprive Berrey of his rights under the Wage Act. A forum selection clause which, in operation, would deprive a Massachusetts employee of the substantive rights of the Wage Act thereby vitiates public policy and is unenforceable. *Melia*, 462 Mass. at 173. Massachusetts "public policy demands more than a *mere possibility* that the [selected] forum 'may apply' the Wage Act or an equivalent law that would protect all of an employee's substantive rights," *id.* at 174 (emphasis added), and the best Defendants can offer is just such a *mere possibility*. Defendants have not represented to this Court that Texas will honor and apply the Wage Act. *Cf. Zucconi v. SRG Techs. LLC*, No. CV 17-11227-LTS, 2018 WL 2305666, at *2 (D. Mass. May 21, 2018) (granting motion to transfer because Court agreed with defendants' representation Florida would apply Massachusetts law). [12]

---

[12] In fact, it appears that Defendants will seek to reject application of the Wage Act in the event this case is transferred to Texas.  See Texas Complaint pg. 10.

The Massachusetts Supreme Judicial Court in *Melia* established a controlling framework for determining when a forum selection clause constitutes a prohibited special contract under the Wage Act. *Melia*, 462 Mass. at 181; *see Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 60-61 (1st Cir. 2016) (citing favorably to *Melia*). Disputes are exempted from forum selection clauses as improper special contracts where the plaintiff ***produces some evidence*** that (i) the Wage Act applies to the claim; (ii) the selected forum's choice-of-law rules would choose a law other than that of Massachusetts; and (iii) the application of the selected law would deprive the plaintiff of the substantive rights guaranteed by the Wage Act. *Melia*, 462 Mass. at 181. The "***proponent of the forum selection clause [retains] the ultimate burden of demonstrating that the clause does not operate as a 'special contract'.***'" *Id.* (emphasis added).

i.      The Wage Act Applies to Berrey's Claims

The Defendants do not dispute that Berrey sufficiently alleges substantive violations of the Wage Act. *See, e.g.*, Compl. ¶¶ 20-26.[13] In fact, while reserving the rights to contest the application of the Wage Act, the Defendants effectively concede that it would be proper for such claims to adjudicated here in Massachusetts. *See* Defs.' Memo pg. 3, n. 6.

ii.      Texas Choice-of-Law Rules Would Select Texas Law

Texas courts will likely apply law Texas law in this matter. Texas choice-of-law principles strongly favor enforcing parties' contractual choice-of-law selections. *See Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324, 331 (Tex. 2014) (following choice-of-law clause despite recognizing chosen state does not have greatest material interest in determining case); *Budge v.*

---

[13] Nor could they—it is well established that an executive, like Berrey, who lived and worked in Massachusetts is entitled to the protections of the Wage Act. *See, e.g. Melia*, 462 Mass. at 187; *Levesque v. Schroder Inv. Mgmt. No. Am., Inc.*, 368 F. Supp. 3d 302, 311 (D. Mass. 2019); *Fine v. Guardian Life Ins. Co. of Am. & Park Ave. Sec.*, 450 F. Supp. 3d 20, 32 (D. Mass. 2020); *Berberian v. G-Form, LLC* No. 14-CV-10422, 2014 WL 12700578, at *4 (D. Mass. Aug. 29, 2014).

*Post*, 643 F.2d 373, 374 n.1 (5th Cir. 1981) ("Thus, the Texas choice-of-law rules provide that if the parties have expressly agreed that the contract is to be governed by the law of a particular state, that intention prevails."); *InterMoor Inc. v. US Wind, Inc.*, 435 F. Supp. 3d 754, 761 (S.D. Tex. 2020) (emphasizing the "weight accorded to choice-of-law clauses").

Unlike Massachusetts, where protections for employees are paramount, Texas favors employers and spurns employee rights. *See Exxon Mobil*, 452 S.W.3d at 329-30 (noting the shift in Texan public policy towards uniform treatment of companies). Texas public policy "value[s] the ability of a company to maintain uniformity in its employment contracts across all employees, whether the individual employees reside in Texas or New York. This prevents the 'disruption of orderly employer-employee relations' within those multistate companies…" *Id.*

The two cases Defendants cite to show Texas courts *could* apply Massachusetts law only prove the point. Both of those cases involved contractual selection of Massachusetts law. *See Sky Techs. LLC v. Sap AG*, No. CIV.A.2:06CV440(DF), 2008 WL 5234644, at *7 (E.D. Tex. June 4, 2008), *aff'd,* 576 F.3d 1374 (Fed. Cir. 2009); *Singer v. Lexington Ins. Co.*, 658 F. Supp. 341, 343 (N.D. Tex. 1986). In both cases, the Texas courts dutifully followed those choice-of-law provisions.

Taken together, this is more than enough evidence to suggest Texas will not apply Massachusetts law here. Thus, the burden is on the Defendants to establish that Texas will apply the Wage Act, and on the record before this Court they have failed to do so. Accordingly, if this Court finds a forum selection clause applicable, it should also find such a clause is a special contract prohibited by the Wage Act.

        iii.    <u>Texas Law Does Not Guarantee Substantive Rights Like Those Guaranteed by the Wage Act.</u>

To carry his burden as to the third element, Berrey need only present some evidence that Texas law would deprive him of the substantive rights guaranteed by the Wage Act. This should be beyond dispute. Texas provides employees with *no* similar statutory rights as set forth under the Wage Act, such as a private right of action, individual liability, and mandatory treble damages and attorney's fees as remedies. Tex. Labor Code Ann. § 61.051.

## V.    VENUE IN MASSACHUSETTS IS CONVENIENT AND FAIR[14]

Lastly, Defendants argue that in the absence of a valid forum selection clause, this case should be transferred to Texas on principles of convenience. The doctrine of *forum non conveniens*, codified at 28 U.S.C. § 1404(a), is a discretionary means of dismissing a case where "the chosen forum (despite the presence of jurisdiction and venue) is so inconvenient that it would be unfair to conduct the litigation in that place." *Howe v. Goldcorp Invest., Ltd.*, 946 F.2d 944, 947 (1st Cir. 1991).

A defendant moving for dismissal on grounds of *forum non conveniens* bears the burden of establishing not only that an adequate alternative forum exists, but also that "considerations of convenience and judicial efficiency *strongly favor* litigating the claim in the alternative forum." *Interface Partners Int'l, Ltd. v. Hananel*, 575 F.3d 97, 101 (1st Cir. 2009) (emphasis added).

Defendants argue this case would more conveniently be heard in Texas because Defendants are Texas residents, and the relevant corporate documents are thus in Texas. Defs.' Memo pg. 15. They also make the conclusory claim that the interest of justice is best served by transfer because

---

[14] Defendants purport to put forth a Rule 12(b)(3) motion to dismiss for improper venue. Venue is proper in Massachusetts because a substantial part of the events and omissions giving rise to Berrey's claims occurred in Massachusetts, 28 U.S.C. § 1391(b)(2), and Defendants do not contend otherwise. Further, Defendants do not make any substantive arguments on the subject, rendering such a motion waived. *U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (law is well settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *see also Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 62 (2013) (forum selection clauses, such as the one Defendants invoke here, do not sound in Rule 12(b)(3)). This opposition will address only the venue argument that Defendants actually put forth, i.e., *forum non conveniens*.

a Texas court "will presumably take the [sic] approximately the same time to resolve the issue." *Id.* Neither of these arguments hold water. The parties and witnesses are split between Massachusetts and Texas, meaning neither is more convenient than the other, and all relevant documents are electronic and can easily be disseminated regardless of forum. Additionally, Defendants' argument that a Texas court's efficiency is roughly equivalent to that of a Massachusetts forum is far from enough to justify a *forum non conveniens* motion. *See Interface Partners*, 575 F.3d at 101.

Here, the balance of both private and public interests dictate that this Court should preside over Berrey's claims.[15] First, and most egregiously, Defendants have engineered judicial inefficiency by filing a substantially overlapping suit in Texas after Berrey filed his Complaint in Massachusetts, and now point to that Texas suit as a basis for transfer, turning the "first filed" rule on its head.[16] Under the "first filed" rule, precedence is given to the first of two duplicative actions in a choice-of-venue decision. *Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co.*, 403 F. Supp. 2d 343, 347 (D. Mass. 2005) (quoting *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987)). This alone counsels rejection of Defendants' *forum non conveniens* argument. *See EMC Corp. v. Petter*, 104 F. Supp. 3d 127, 135 (D. Mass. 2015) (court refuses to "abdicate its responsibility to exercise jurisdiction where it exists" where defendants filed second suit in foreign forum because "fairness to [the Plaintiff] counsels in favor of proceeding with this first-filed action"). Second, Berrey is a Massachusetts resident who lived and worked in Massachusetts at all relevant times, and he has chosen Massachusetts as the forum to litigate his claim. His choice

---

[15] As stated above, the private interests here are, at best, a wash.

[16] Bafflingly and hypocritically, Defendants argue their second-filed suit should be the one to proceed in order to avoid the "wasteful and unnecessary expenditure of resources." Defs.' Memo pg. 16.

merits consideration. *See Atl. Marine*, 571 U.S. at 62 n.6 ("The Court must also give some weight to the plaintiffs' choice of forum.").

Third, Massachusetts has a far greater interest than Texas in deciding these issues, not only because all of Berrey's claims arise out of Massachusetts law but also because the Commonwealth has a "fundamental policy interest in enforcing the Massachusetts Wage Act." *Levesque v. Schroder Inv. Mgmt. No. Am., Inc.*, 368 F. Supp. 3d 302, 312 (D. Mass. 2019); *see also Fine v. Guardian Life Ins. Co. of Am. & Park Ave. Sec.*, 450 F. Supp. 3d 20, 31 (D. Mass. 2020) (emphasizing "the important policy considerations that are expressed in the Massachusetts Wage Act"). Last, this Court has more expertise and experience in the interpretation and application of the Wage Act than a Texas court would. *See TargetSmart Holdings, LLC v. GHP Advisors, LLC*, 366 F. Supp. 3d 195, 219 (D. Mass. 2019) (court's familiarity with law may "caution against transfer").

All of these factors weigh in favor of recognizing Massachusetts as the appropriate forum and denying Defendants' motion to dismiss on *forum non conveniens* grounds.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff Alan Berrey respectfully requests that this Court deny Defendants' motion to dismiss and/or transfer this matter.

Respectfully submitted,

ALAN BERREY,
Plaintiff,
By his attorneys,

/s/ David I. Brody
Brian J. MacDonough (BBO #667553),
David I. Brody (BBO #676984)
Kellen J. Safreed (BBO #709671)
Sherin and Lodgen LLP

101 Federal Street
Boston, Massachusetts 02110
(617) 646-2000
bjmacdonough@sherin.com
dibrody@sherin.com
kjsafreed@sherin.com

Dated:  July 28, 2023

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document filed through the ECF system will be sent electronically to the

registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will

be sent to those indicated as non-registered participants on the date specified below.

*Counsel for Defendant*
Lita M. Verrier, Esq.
Jeannette M. Piaget Figueroa, Esq.
Jackson Lewis, P.C.
75 Park Plaza, 4th Fl.
Boston, MA 02116


Dated: July 28, 2023                                    /s/ David I. Brody_____
                                                       David I. Brody

01. Sherin and Lodgen\4861-9658-8147.v1-7/27/23